JOHN FRIEL ET UX. v. MRS. FRANK H. ALEWEL and JOHN D. KERR, Trustee, Appellants.—298 S. W. 762.

Division Two, October 10, 1927.

(1)

2

*Alphonso Howe* for appellants.

4

*Jones, Hocker, Sullivan & Angert* for respondents.

DAVIS, C.—This is a suit in equity to try, ascertain and determine title to a certain parcel of land in Block 1037 of the city of St. Louis, fronting thirty feet on the north line of the street, known as 3125 Lucas Avenue. Tried before the chancellor, a decree was entered adjudging plaintiffs to be the absolute owners of said parcel, defendants appealing therefrom.

The evidence warrants the finding that plaintiffs and defendants claim from a common source of title, one Philip T. May. The defendants claim by virtue of a deed of trust executed by said Philip T. May on May 23, 1910, which defendants caused to be foreclosed, defendant, Mrs. Alewel, subsequently acquiring title from the successful bidder. The foreclosure title rests upon a sale had on June 15, 1923, based upon the publication of a notice of sale under power of sale in the deed of trust, the first insertion published on May 22, 1923, followed by publications to and including June 15, 1923. The notes, secured by the deed of trust, were dated May 23, 1910, and, running three years, matured May 23, 1913. Plaintiffs claim title by *mesne* conveyances from said Philip T. May, emanating from a warranty deed executed by him on October 1, 1910.

The pleadings comprise a petition, an answer including cross-bills, and replies. We need not notice the petition further than to remark that it relies on the inefficacy of the publication of May 22, 1923, to toll the Statute of Limitations. Defendant's answer avers the efficacy of the publication to toll the statute and give her title. Her cross-bills comprise an action in ejectment, and a suit to try and determine title. Plaintiffs' reply restates largely the matter of the petition, while defendants' replies are general denials.

The facts developing that the foreclosure sale, under the deed of trust, dated May 23, 1910, was had on June 15, 1923, pursuant to the publication of a statutory notice of sale otherwise full and competent, both plaintiffs and defendants concede that the sole substantive inquiry relates to the efficacy of the first publication of the notice of sale, on May 22, 1923, to toll the Statute of Limitations on the note expiring by limitation on May 23, 1923.

I. However, plaintiffs primarily raise a question of procedure, which we must notice. It relates to the sufficiency of the assignment of errors. We are unable to see how the inquiry could have been more effectively raised than by stating, in substance, that the trial court erred in holding that the first publication of the notice of sale, on May 22, 1923, was insufficient to stop the running of the Statute of Limitations. Other assignments of error also preserve the question, but we think it is un-

necessary to further encumber the opinion by enlarging the examination of them.

II. It may not be amiss to say that the evidence sanctions the finding that one Rogers, a suicide, probably a partner of Philip T. May, forged notes, dated May 23, 1910, duplicating those held by Mrs. Alewel's father and secured by the deed of trust, and presented them to the Recorder of Deeds of the City of St. Louis, causing the spurious release of the deed of trust in 1913. It is evident that this particular encumbrance did not affirmatively appear as a lien when plaintiffs acquired title later. It is further evident that the record evidence charges neither plaintiffs nor defendants with knowledge or delinquency with respect to the fraudulent release of the deed of trust. They stand equally innocent of blame or guilty knowledge. Consequently the maxim, "Where the Equities are equal the Law will prevail," applies.

III. We return to the inquiry of the efficacy of the first publication of the notice of sale to toll the Statute of Limitations. The pertinent portion of Section 1320, Revised Statutes 1919, as amended pages 202, 203, Laws 1921, reads:

"No suit, action or proceeding under power of sale to foreclose any mortgage or deed of trust, to secure any obligation to pay money or property, shall be had or maintained after such obligation has been barred by the statutes of limitation of this State."

Construing Section 1320 conjointly with Section 1316, to which it inferentially refers, it is evident from the recorded facts that the note, maturing on May 23, 1913, was barred ten years thereafter (Bush v. White, 85 Mo. l. c. 360), unless the record warrants the finding that the running of the statute became arrested.

IV. Plaintiffs aver that, to the words, "No suit, action or proceeding," found in Section 1320, the rule *ejusdem generis* is applicable, because the word "proceeding" synonymizes with the preceding words "suit, action." We are unable to agree that the rule is apposite, for the word "proceeding," as used in the statute, is not inferentially limited to the preceding class by the use of some qualifying adjective, such as "other," but the word "proceeding" was intended to refer to a course of action independent of a suit or action, filed in a court of equity or law, to foreclose. That the law-making body so intended is accentuated by the authorized foreclosure procedure, as exemplified by

Chapter 19, Article 2, Revised Statutes 1919, comprising Sections 2219, *et sequa,* providing concurrent methods of foreclosure, first, by petition filed in the circuit court, and, second, by trustee's sale in accordance with the statutes, under the terms and provisions of the mortgage or deed of trust. That the word "proceeding" is not congruous with the words "suit or action" is amplified by the words "under power of sale" immediately following the term "proceeding," which term alone the phrase, "under power of sale," attends and qualifies. It is evident the phrase was not intended to qualify the words "suit or action," for such a construction would leave mortgages without power of sale subject to foreclosure after the obligation has been barred by limitation.

V. Having ruled that the statute individuates a "proceeding under power of sale" as a classification distinct from a suit or action, we inquire as to the statutory import of a proceeding. It is defined as "an act or course of action; a transaction or procedure."

It is the contention of plaintiffs that the term "proceeding" comprehends a course of action comprising all steps necessary to a full and complete foreclosure under the deed of trust, including a sale. To support their position that, to validate the foreclosure, every step in the proceeding must be taken before the prescribed period ends, plaintiffs cite Blackwell v. Barnett, 52 Tex. 326; Duncan v. Menard, 32 Minn. 460, 21 N. W. 714; Slater v. Roche, 126 N. W. (Ia.) 925, 28 L. R. A. (N. S.) 702; Fish v. Collins, 160 N. W. (Wis.) 163; 17 R. C. L. 809; 37 C. J. 1094. None of the authorities, however, cited by plaintiffs, deal with a statute of the import of Section 1320; and none of the cases relied on to define a proceeding bear on an act or course of action unrelated to a suit or action. We are of the opinion that a "proceeding under power of sale," as used in the statute, means a course of action or procedure, resulting in competent, orderly and continuous steps of procedure until the power of sale has been fully exercised in accordance with the statutes appertaining thereto. Plaintiffs argue, however, that the statute, prescribing that no proceeding shall be had or maintained after such obligation has been barred, forces the interpretation that every step in the foreclosure proceeding must have been exercised to toll the limitation statute. The word "had" is there used in the sense of commenced or begun. In Carson-Rand Co. v. Stern, 129 Mo. 381, 31 S. W. 772, "maintained" is defined literally as "to hold by the hand; hence (in ordinary use) to uphold, to sustain, to keep up." In said case the court further say: "There is a well-defined distinction between beginning and maintaining an action, viewed with reference to the facts of the controversy now before us." While we agree that a well-de-

8

fined shade of meaning obtains between had and maintained, nevertheless Section 1320 must be read in the light of the announced policy of the law relative to the tolling of the Statute of Limitations when a right has been asserted. Section 1320 makes no distinction relative to beginning or maintaining a suit, action or proceeding under power of sale to foreclose a mortgage or deed of trust. The context suggests that the application of the limitation statute to either classification would extend the application of it to each and every one alike. Therefore, the statute operates on each classification with the same effect, resulting that a proceeding under power of sale is barred whenever a suit or action is barred, and, conversely, that whenever the limitation statute is tolled as to a suit or action, it is tolled as to a proceeding. It is the law in this State, as well as throughout the United States generally, that the commencing of a suit or action arrests the running of the statute. [Knisely v. Leathe, 256 Mo. 341, 166 S. W. 257; Gosline v. Thompson, 61 Mo. 471; Buel v. St. Louis Transfer Co., 45 Mo. 562; 37 C. J. 1051-1052; 17 R. C. L. 809, sec. 176.] It is evident that the Legislature had in mind the rule that the commencement of a suit or action arrests the running of the limitation statute when they constructed and passed Section 1320. Construing the rule and Section 1320 conjointly, which we think we must, and bearing in mind the evident intent of the Legislature, it is plain that the commencement of a suit or action to foreclose a mortgage or deed of trust arrests the running of the Statute of Limitations. We so conclude, in face of the view that a literal translation of the context might construe the statute otherwise. It is our purpose, however, to give the statute a direct, not a strabismic translation. In the light of the law as it existed at the enactment of the statute, maintained alludes to a course of action, and in conjunction with the word "had" signifies beginning and continuing the course to its completion. Construing it reasonably, the statute means that a suit or action may not be continued if it is not begun before the statute becomes a bar, but that it may be continued to completion if begun within the period of the statute. The completion of the course of action, under foreclosure, culminating in a judgment, relates back and reverts to the commencement, resulting in the tolling of the statute. To interpret the statute, as to a proceeding under power of sale, otherwise than it is interpreted as to a suit or action, would be placing a construction thereon not intended or justified.

Plaintiffs argue, however, that, to arrest the running of the statute, the proceeding contemplated must be tantamount to a suit in equity or an action at law, supporting their position by 37 Corpus Juris, 1094, reading: "In order that a proceeding other than an action may have the effect of stopping the running of the Statute of

Limitations, it must be equivalent to an action at law or a suit in equity.'' If the rule means that, to be equivalent, the proceeding must be commenced in some authorized tribunal, then plaintiffs' position is correct. But we do not so construe the rule.

Two methods are open to the holder of a mortgage or deed of trust, with power of sale, to foreclose. First, he may foreclose by suit or action in court, or, second, he may foreclose by publication under the terms and provisions of the instrument. While the question is not free from difficulty, a reading of Section 1320, in view of optional methods of foreclosing authorized by Chapter 19, Article 2, Revised Statutes 1919, leads to the conclusion that a proceeding under power of sale to foreclose, by advertising and sale, under the instrument, is tantamount to a suit in equity or an action at law. The end to be realized is the same. Under foreclosure by suit or action, the object sought is the sale of the property. Incidentally a deficiency judgment may be prayed, but the real end is the sale. So with a proceeding under power of sale to foreclose, the end to be realized by the proceeding is the sale. Incidentally, thereafter, an action asking a deficiency judgment may be instituted. Consequently, a suit or action to foreclose and a proceeding under power of sale to foreclose are equivalent in force and effect. Section 1320 authorizes the construction and ruling that beginning the publication of the notice of sale, prior to the barring of the obligation on which the deed of trust rests, even though more than ten years elapse before the sale thereunder occurs, arrests the running of the limitation statute, provided an orderly and continuous proceeding to the end is maintained.

VI. If defendant, Mrs. Alewel, had filed an original suit or action, pleading in the same petition counts in ejectment and to ascertain and determine title, no doubt would obtain, under our decisions, as to her right to so join them. [Lane v. Dowd, 172 Mo. 167, 72 S. W. 632; Mann v. Doerr, 222 Mo. 1, 121 S. W. 86; Jamison v. Galloway, 254 S. W. 101.] The question presented, however, is whether the answer, containing cross-bills in ejectment and to quiet title, asking affirmative relief, comes within the provisions of our counterclaim statute. Section 1232, Revised Statutes 1919, authorizes a statement of any new matter constituting a defense or counterclaim. Section 1233 countenances its use, first, when the cause of action arises out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of action; second, in an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action.

It is clear that defendant's cross-bills in ejectment and to quiet title cannot rest on an action arising on contract, for contractual re-

lations between plaintiffs and the defendant were not developed. Whether it arises out of a transaction we need not decide, for we think the cross-bills are connected with the subject of action, the title to the property in controversy. Plaintiffs' petition sought the ascertainment and determination of the title to a certain parcel of real estate, and both of defendants' cross-bills or counterclaims were directed to that end. In other words the avowed purpose of all the pleadings was to try title to said parcel. It is useless to attempt to enlarge or elaborate the discussion of GOODE, J., in McCormick Harvesting Co. v. Hill, 104 Mo. App. 544, 79 S. W. 745, on the subject. The cross-bills were germane to the petition and within the general scope of the matters embraced in it.

It follows that we reverse the judgment and remand the cause with directions to the trial court to set aside its judgment in favor of plaintiffs, dismissing defendants' cross-bills, and to enter a finding and judgment dismissing plaintiffs' petition and in favor of defendant, Mrs. Frank H. Alewel, on her answer and first and second cross-bills as prayed, and for such sum, if any, as the court may find to be the reasonable rental value of the property from the time of filing the cross-bills. *Higbee* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.